UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN- SOUTHERN DIVISION

RONECA ECHOLS
    Plaintiff

-vs-                                      Case No.
                                              Hon.

CARITE OF KALAMAZOO,
*d/b/a* BLACK TIE, INC.
    Defendant.

## COMPLAINT & JURY DEMAND

*Roneca Echols states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq* and 28 U.S.C. §§ 1331,1337.

2. This court has jurisdiction under the Truth In Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337.

3. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims under 28 U.S.C. § 1367. All claims and allegations in this complaint arise out of the same transaction relating to the purchase of a car on or around March 7, 2016 by Roneca Echols.

### Parties

4. The Plaintiff to this lawsuit is Roneca Echols who resides in Kalamazoo, MI.

5. The Defendant to this lawsuit is CARite of Kalamazo, d/b/a Black Tie, Inc., "CARite," which is a corporation doing business in Michigan that is a creditor for purposes of the

1

ECOA.

## Venue

6. The transactions and occurrences which give rise to this action occurred in Kalamazoo County.

7. Ms. Echols is a citizen of the State of Michigan and resides in Kalamazoo County.

8. Venue is proper in the Western District of Michigan.

## General Allegations

9. On or about March 7, 2016, Ms. Echols went to Defendant CARite for the purpose of purchasing a vehicle.

10. CARite requested that Ms. Echols provide information for a credit application, as the term is used in the ECOA 15 U.S.C. § 1691.

11. Ms. Echols provided information concerning the credit application accurately and truthfully.

12. Ms. Echols presented pay stubs from her employer.

13. CARite informed her that her credit application would be sent to Credit Acceptance Corporation.

14. Defendant CARite gave Ms. Echols a 2015 Ford Fusion to purchase which they allowed her to drive home that day.

15. Defendant CARite subsequently granted Ms. Echols credit.

16. There was an agreement for the sale of the car and Ms. Echols tendered the required down payment of $2,200 which she paid in cash and credit in installments.

17. After purchasing the car, Ms. Echols made arrangements to switch her car insurance to the 2015 Ford Fusion.

18. Ms. Echols received a credit approval notification from CARite in a notice dated March 7, 2016.

19. At or around the time of the credit transaction, CARite simultaneously required Ms. Echols to sign a Rental Agreement for the 2015 Ford Fusion.

20. The Rental Agreement provided a rental period of about 3 to 4 weeks.

21. The Rental Agreement also reflects a $2,200 charge, $1,200 of which was charged for gas.

22. About two months after driving the vehicle, Defendant CARite asked Ms. Echols to come into the dealership to sign some paperwork. This was confusing to Ms. Echols because she was under the impression that she had already signed all the necessary paperwork.

23. When Ms. Echols arrived at the dealership, CARite informed her that she did not qualify for financing for the 2015 Ford Fusion.

24. CARite did not provide any explanation as to why she no longer qualified for financing.

25. CARite denied; or alternatively revoked credit.

26. CARite informed Ms. Echols that they had a 2013 Chevrolet Malibu for which she may qualify; however, she would need to pay roughly another $500 towards her down payment.

27. Ms. Echols declined the 2013 Chevrolet Malibu and CARite demanded that Ms. Echols relinquish the 2015 Ford Fusion at the dealership.

28. At the time that CARite allowed Ms. Echols to obtain the vehicle, CARite knew that the credit application had not been finally acted upon, and that they would treat the approval as conditional.

29. Neither CARite, nor its staff had any legal right to keep the vehicle from Ms. Echols.

30. The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. §440.2101 et seq.

31. The initial credit approval by Credit Acceptance was accurate and CARite knew the notice to be accurate at the time it was issued.

32. CARite did not provide Ms. Echols with the information necessary to identify why they were refusing to honor her credit approval.

33. CARite did not provide Ms. Echols with a compliant adverse action notice under the ECOA.

34. Ms. Echols anticipated that the information in the adverse action notice would provide her with the information necessary to understand why she had been denied.

35. The failure of CARite to provide Ms. Echols with an adverse action notice conforming to the ECOA deprived her of information which may have allowed her to correct any incorrect information on her consumer reports.

36. Ms. Echols suffered an injury in fact in the form of deprivation of statutorily required notices intended to assist her in understanding the reason for the denial.

### **Background as to CARite**

37. CARite holds a license as a retail instalment seller of motor vehicles under M.C.L. § 492.101 et seq.

38. CARite holds a license to operate as motor vehicle dealer under the Michigan Motor vehicle Code, M.C.L. § 258.101 et seq.

39. CARite identifies itself as the "creditor" in every credit transaction which it engages where it executes a retail installment sales contract with a customer.

40. CARite receives credit application data from consumers.

41. CARite processes that data.

42. CARite accesses and uses consumer reporting data for purposes of evaluating the

creditworthiness.

43. CARite selects creditors to whom it may assign retail installment sales contracts.

44. CARite participates in credit decisions in relation to its credit customers.

45. CARite regularly participates in the profit generated by credit contracts in the form of "dealer participation" or "reserve" amounts.

46. CARite proposes terms of credit to customers and third-parties to whom it assigns retail installment sales contracts, including down payment, interest, payments and amount financed.

47. CARite ultimately sets the terms of credit between itself and its customers.

48. No third party has the authority to direct CarRite to execute any particular retail installment sales contract, including the one envisioned between CARite and Ms. Echols.

49. CARite executes all rights as "creditor" or a "party to" when initially payable.

## **Adverse Action Notice Requirements under the ECOA**

50. Pursuant to 15 U.S.C. § 1691(d)(1) the creditor must notify the applicant within 30 days of receipt of a completed application for credit of its action on the application.

51. If the credit application is not completed by the consumer, the creditor must inform the consumer of that fact and identify the missing information within 30 days of the initial application. 12 CFR 202.9(c).

52. 15 U.S.C. § 1691(d)(2) requires the creditor to provide a statement of reasons for its actions or else inform the consumer of their right to obtain those reasons within 60 days of the notice.

53. The statement of reasons may be satisfied by:

  a. Providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

  b. Giving written notification of adverse action which discloses (1) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

## COUNT I – Equal Credit Opportunity Act

54. Ms. Echols incorporates the preceding allegations by reference.

55. CARite received an application for credit from Ms. Echols.

56. CARite was a "creditor" in relation to Ms. Echols' application for financing, for purposes of the ECOA 15 U.S.C. § 1691.

57. Ms. Echols submitted a credit application to CARite relating to the acquisition of the vehicle.

58. CARite initially informed Ms. Echols that the credit application submitted by Ms. Echols had been approved and provided notice stating the same.

59. CARite then informed Ms. Echols that her credit application had been denied.

60. CARite violated the ECOA in relation to Ms. Echols by failing to provide an adverse action notice in violation of 15 U.S.C. § 1691; alternatively, CARite misrepresented its decision to grant credit in violation of the ECOA 15 U.S.C. § 1691.

61. CARite has inadequate policies or procedures in place to comply with the ECOA's adverse action notice requirements.

62. At the time that CARite told Ms. Echols she was approved, CARite knew that the credit application had not been finally acted upon, and that CARite would treat the approval as conditional.

63. CARite later revoked the approval alternatively demanding return of the vehicle.

64. The initial credit approval by CARite was false and CARite knew the notice to be false at the time it was issued, as it knew that it treated all credit approvals as conditional.

65. The credit approval by CARite was false and therefore in violation of the ECOA.

66. Ms. Echols suffered damages as a result of this violation of the ECOA.

67. CARite's violations of the ECOA, 15 U.S.C. § 1691 were willful.

## **COUNT III- Truth In Lending Act**

68. Ms. Echols incorporates the preceding allegations by reference.

69. At all relevant times CARite– in the ordinary course of its business – regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than 4 installments and is the person to whom the transaction which is the subject of this action is initially payable, and is a "creditor" under TILA, 15 U.S.C. § 1602(f) and regulation Z § 226.2(a)(17).

70. CARite improperly itemized a charge in the amount of $2,200 as a down payment when in fact that charge was part of the Rental Agreement fee.

71. CARite failed to disclose that it could retake the vehicle or demand more money, 15 U.S.C. § 1638; 16 CFR § 226.18.

72. The failure to properly disclose the cash price of the vehicle consequently caused a failure to inaccurately disclose the amount financed in violation of 15 U.S.C. § 1638; 16

CFR § 226.18 (b) and (c).

73. Ms. Echols performed all terms and conditions by CARite.

74. Ms. Echols was entitled to a copy of TILA disclosures.

75. CARite did not provide any TILA disclosures.

### COUNT IV – Common Law Conversion

76. Ms. Echols incorporates the preceding allegations by reference.

77. CARite has converted the vehicle.

78. Ms. Echols suffered damages as a result of this conversion.

### COUNT V – Statutory Conversion

79. Ms. Echols incorporates the preceding allegations by reference.

80. After obtaining Ms. Echols signature on all documents necessary to complete the financing of the vehicle, CARite delivered the vehicle to Ms. Echols.

81. CARite took the vehicle from Ms. Echols.

82. CARite had no right to possess the vehicle.

83. CARite was not acting on behalf of any individual or entity with the right to possess the vehicle.

84. CARite illegally retook possession without the permission of Ms. Echols or other legal authorization.

85. CARite's actions in taking possession of the vehicle was wilful or intentional, and in derogation of he contract of sale.

86. These acts constitute a willful or intentional conversion under M.C.L. § 600.2919a.

87. Ms. Echols suffered damages as a result of this violation of the Michigan Conversion

Statute.

## Jury Demand

88. Ms. Echols demands a trial by jury in this action

## Request for Relief

89. ACCORDINGLY, Ms. Echols requests that this Honorable Court grant the following relief:

    a. *Assume jurisdiction over this case.*

    b. *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

    c. *Award statutory and punitive damages.*

    d. *Award Ms. Echols attorneys' fees and costs, as allowed by law and/or equity.*

    e. *Any other relief as the Court deems necessary, just, and proper.*


Respectfully Submitted,


By:    s/ Priya Bali
         Priya Bali (P78337)
         Attorney for Roneca Echols
         LYNGKLIP & ASSOCIATES
         CONSUMER LAW CENTER, PLC
         24500 Northwestern Highway, Ste. 206
         Southfield, MI 48075
         PH: (248) 208-8864
         Priya@MichiganConsumerLaw.Com

Dated: March 3, 2017